Filed 1/9/15  P. v. Tapia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048757 |
| v. | (Super. Ct. No. 12HF2499) |
| GASTON LEOBARDO TAPIA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed in part, reversed in part and remanded.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Robin Urbanski and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of recklessly evading the police, hit and run with property damage, and driving with a revoked license. On appeal, he contends one of his defense witnesses was subjected to improper impeachment, and there is insufficient evidence he knew his license had been revoked. Although we disagree with those contentions, it does appear that appellant was improperly sentenced. Therefore, we will vacate his sentence and remand the matter for a new sentencing hearing. In all other respects, we affirm the judgment.

FACTS

On the afternoon of August 22, 2012, CHP Officer Sandro Kitzmann noticed appellant driving approximately 80 m.p.h. on the I-5 Freeway in Orange County. Kitzmann activated his overhead lights to initiate a traffic stop, but instead of pulling over, appellant sped up and led Kitzmann on a high-speed chase. At one point during the pursuit, appellant clipped the back of another vehicle and spun out of control. However, before Kitzmann was able to apprehend him, he restarted his vehicle and took off again. Although Kitzmann resumed the chase, he lost sight of appellant after appellant exited the freeway in San Clemente.

Later that day, Kitzmann ran a records check and determined the vehicle appellant had been driving was registered in appellant's name, and appellant's driver's license was revoked. Kitzmann also accessed appellant's DMV photo and determined it looked like the person he had chased on the freeway. At trial, Kitzmann testified he was "100 percent confident" appellant was that person.

Appellant's defense was alibi. Although he did not testify at trial, his attorney claimed appellant was at work when the chase occurred. To support that claim, the defense presented testimony from Sheila Case and Richard McCaskill, a mother-son team who head up an online marketing company. They testified appellant was working at their company in San Diego at the time of the alleged crimes. While Case's testimony

2

was based on company attendance records, McCaskill claimed he personally saw appellant at work "all day" on the day in question.

Nevertheless, the jury convicted appellant of recklessly evading the police, felony hit and run, and driving on a revoked driver's license. After appellant admitted he had served four prior prison terms, the court sentenced him to five years in prison: two years for the evading offense, plus three years for the prison priors.

*Impeachment of Defense Witness Case*

Appellant claims Case was subjected to excessive impeachment by virtue of her prior criminal record. He also claims his attorney was ineffective for "opening the door" to some of the impeachment Case endured. Neither claim has merit.

At the time of trial, Case had six felony convictions to her name. She was convicted of burglary in 2000, residential burglary and identity theft in 2002 (for which she was sentenced to four years in prison) and forgery, burglary and possessing a controlled substance for sale in 2008. Knowing Case was going to testify for the defense, the prosecutor asked the court if she could use those convictions for impeachment purposes. Defense counsel argued the convictions from 2000 and 2002 were too remote to be probative, and the only conviction arguably admissible was the 2008 forgery conviction.

The court balanced the probative value of the prior convictions against their possible prejudicial impact under Evidence Code section 352.[1] It also recognized the impeachment issue implicated appellant's right to due process and a fair trial. While it believed Case's burglary conviction from 2000 was too remote, and her drug conviction from 2008 did not involve moral turpitude, the court ruled the prosecution could use the remaining four convictions to impeach Case at trial. Rejecting the argument that

---

[1]     Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

3

impeachment with four convictions would amount to excessive "piling on," the court reasoned the convictions were relevant not only to show Case committed various crimes involving dishonesty, but that she continued her criminal ways over a substantial period of time. However, the court ruled that, in impeaching Case with her prior convictions, the prosecution could not elicit any of the facts underlying her particular crimes.

At trial, defense counsel was the first to bring up Case's prior convictions. Apparently, he thought it would soften the impact of the priors if he asked Case about them himself. So, as Case's direct examination was winding down, he asked her if she had "ever been in trouble with the law?" When Case answered yes, defense counsel asked her how many times, and she said three or four. She also admitted those incidents resulted in felony convictions. With that, defense counsel yielded the floor to the prosecutor for cross-examination.

However, before launching into questioning the prosecutor asked the court for a sidebar to revisit the impeachment issue. It was the prosecutor's position that by testifying she had only been in trouble with the law three or four times, Case had effectively "impeached herself" and opened the door to further questioning about her criminal convictions. The court agreed, to an extent. It ruled the prosecutor could bring out the fact that Chase had actually suffered six felony convictions, not just three or four. But as far as describing what those convictions were for, the court ruled the prosecutor could only describe the four original convictions it had previously determined were admissible.

On cross-examination, Chase admitted she had been convicted of residential burglary and identity theft in 2002 and forgery and burglary in 2008. When the prosecutor asked her if she had suffered any other felony convictions, Case stated "those pretty much summed it up." At that point, the court gave the prosecutor permission to ask Case about her other convictions, to see if that would jar her memory. The prosecutor then asked Case if she had been convicted of burglary in 2000 and selling

4

a controlled substance in 2008.  Chase admitted she had.  On redirect, she said she had done her best in terms of trying to remember her criminal history and was not trying to mislead anyone about her record.

Appellant's argument on appeal is rather narrow.  He does not challenge the trial court's initial decision to allow the prosecution to impeach Case with four of her felony convictions.  However, he claims there was no justification for the court to allow the prosecutor to ask Case about her two other felony convictions.  We disagree.

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931, fn. omitted, citing *People v. Wheeler* (1992) 4 Cal.4th 284, 290-296.)  A witness may also be impeached with evidence that tends to contradict testimony given on direct examination, even if that evidence would not otherwise be admissible. (*People v. Lang* (1989) 49 Cal.3d 991, 1017; Evid. Code, § 780, subd. (i).)  Because the court's discretion to admit relevant impeachment evidence "'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*People v. Clark, supra,* 52 Cal.4th at p. 932.)

As explained above, the trial court allowed the prosecutor to question Case about her two additional felony convictions after she testified she had only been in trouble with the law three or four times.  Appellant argues the phrase "in trouble with the law" is so vague and ambiguous there is no reason to believe that Case knew it included her two additional felony convictions or that she was trying to minimize her criminal record.  But suffering a felony conviction is the very epitome of getting in trouble with the law.  While a person who was arrested and then released without charges, or someone who was charged but then acquitted, could legitimately dispute whether they had actually "gotten in trouble with the law," there is no dispute that Case was arrested, charged and

5

convicted of her crimes. Therefore, we perceive no abuse of discretion in the court's decision to allow Case to be impeached with all six of her felony convictions. The first four the court allowed were relevant to show Case's general willingness to lie and do evil (*People v. Wheeler, supra*, 4 Cal.4th at p. 295), and the second two were relevant to show she lied on direct examination by claiming she had only been in trouble with the law three or four times. (See generally *Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 945-946 [a witness's testimony on direct examination "may open the door to the use of otherwise inadmissible evidence of prior misconduct for the purpose of contradicting such testimony"].)

Alternatively, appellant argues his attorney was ineffective for asking Case how many times she had been in trouble with the law. Appellant asserts the question "was an unsound tactic since it unreasonably risked opening the door to the prosecutor's devastating impeachment of Case." We agree the question was ill-advised. Instead of asking Case how many times she had been in trouble with the law, defense counsel should have just asked her about the four particular felonies the trial court had determined were relevant to her impeachment. That way, there would have been no danger of opening the door to impeachment with her other two felonies.

But in order to establish a claim of ineffective assistance of counsel, appellant must not only prove his attorney's performance was deficient, he must also affirmatively establish prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To do this, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.) Under this standard, the defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

6

In arguing defense counsel's questioning paved the way for "devastating impeachment" of Case, appellant overlooks the fact that regardless of anything his attorney did, Case was still subject to impeachment by virtue of her prior convictions. Indeed, it is undisputed that four of her prior felonies were fair game for impeachment. It is unlikely the jury's impression of her credibility was materially affected by mention of her two other felony convictions.

Moreover, Case's testimony was cumulative of and less favorable to the defense than McCaskill's testimony. Whereas Case had no personal recollection of appellant working at her San Diego business on the day in question, McCaskill testified he actually saw appellant at work that day. That testimony having been rejected by the jury, we do not share appellant's view that Case's testimony that records showed Tapia was there was "essential" to his alibi defense.

Nor do we believe it is reasonably probable appellant would have obtained a more favorable outcome had his attorney acted differently. Even though defense counsel's questioning of Case led to a modicum of additional impeachment, our confidence in the verdict is not affected. Counsel's performance is not grounds for reversal.

*Sufficiency of the Evidence*

Appellant also contends there is insufficient evidence to support the jury's finding he knew his driver's license had been revoked at the time of the alleged crimes. Again, we disagree.

In reviewing the sufficiency of the evidence to support a criminal conviction, we examine the entire record and draw all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 749.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the

7

circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "'After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient evidence to support it.' [Citation.]" (*People v. Gonzales* (1970) 4 Cal.App.3d 593, 602; accord *People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Appellant was charged with violating Vehicle Code section 14601.2, subdivision (a), which makes it a crime to drive with a license which is "suspended or revoked for a conviction of a violation of Section 23152 [driving under the influence] or 23153 [driving under the influence and causing bodily injury] *if the person so driving has knowledge of the suspension or revocation*." (Italics added.) Knowledge is presumed if the driver has been given notice by the court or has received mailed notice from the DMV. (Veh. Code, § 14601.2, subd. (c).)

Here, there was no direct evidence appellant ever received notice of revocation from the court or the DMV. However, as appellant admits, knowledge can be inferred from other circumstantial evidence. In fact, because a person's knowledge of any particular fact "is rarely susceptible of direct proof" it typically "must be established by circumstantial evidence and the reasonable inferences to which it gives rise." (*People v. Buckley* (1986) 183 Cal.App.3d 489, 494-495.)

At trial, the prosecution presented considerable evidence regarding appellant's driving record. Among other things, the evidence revealed 1) Appellant's driver's license was first suspended in 1997, 2) he's been convicted of driving under the influence four times, 3) following his third such conviction, his driver's license was revoked, and 4) his license was still on "revoked status" at the time the instant offenses occurred. Given appellant's driving record and his extensive involvement with the judicial system, it is reasonable to believe he knew he was driving on a revoked license when Officer Kitzmann tried to pull him over. A jury could reasonably wonder why else

8

he would take such drastic measures to avoid apprehension for a simple traffic violation. While it is *possible* appellant was motivated by something else, respondent is correct that, "There was *no evidence* of any other reason for appellant to initiate a high speed chase down a moderately populated freeway."

Drawing all inferences in favor of the judgment below, *as we are required to do*, there is sufficient evidence to support the jury's finding appellant knew his driver's license had been revoked. We are therefore powerless to disturb his conviction for driving on a revoked license.

*Prior Prison Term Enhancements*

Following his conviction on the underlying charges, appellant admitted and the court found he had served four prior prison terms on four different cases. Although Penal Code section 667.5, subdivision (b) authorizes a one-year sentence enhancement for each prior prison term, the court struck one of the prison priors and enhanced appellant's two-year base term an additional three years under that section.

However, the record shows appellant's sentences on two of his prior cases were actually merged into a single consecutive sentence. Therefore, as the Attorney General concedes, the time served on those cases should have been treated as but one prior prison term for purposes of Penal Code section 667.5, subdivision (b). (*People v. Shea* (1995) 39 Cal.App.4th 1257, 1274; *People v. Perez* (1992) 4 Cal.App.4th 893, 910-911.)

The problem is, the trial court didn't know that. Had the court realized appellant was only eligible for three one-year prison enhancements, not four, it might not have struck one of the enhancements. While appellant urges us to strike another one of the enhancements and reduce his total sentence from five years to four years, we believe the proper remedy is to vacate appellant's sentence and remand for a new sentencing hearing. This will ensure the trial court's sentencing decision is based on a full and correct understanding of appellant's sentencing exposure. (See *People v. Deloza* (1998)

9

18 Cal.4th 585, 600 [remand required where the trial court misunderstood the scope of its sentencing discretion].)

DISPOSITION

Appellant's sentence is vacated, and the matter is remanded for a new sentencing hearing.  In all other respects, the judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.